# SEALED



**ORIGINAL**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

SEP -1 PM 1:54

DEPUTY CLERK_____ **nb**

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, | § § § | |
| Plaintiff, | § § | Civil Action No. |
| v. | § § § | **3-22CV1944-M** |
| ACKERMAN McQUEEN, INC. and MERCURY GROUP, INC. | § § § | **FILED UNDER SEAL** |
| Defendants. | § § § § § § | |

## PLAINTIFF'S COMPLAINT

Plaintiff National Rifle Association of America (the "NRA") files this Complaint against Ackerman McQueen, Inc. ("AMc") and Mercury Group, Inc. ("Mercury Group") (collectively, "Defendants"), on personal knowledge as to its own actions and on information and belief as to all other matters.

Plaintiff seeks to file this Complaint under seal as requested in the contemporaneously filed Plaintiff's Motion for Leave to File Under Seal the Complaint, Confidential Settlement Agreement, and Related Drafts.

### I. PRELIMINARY STATEMENT

1.   This is an action for breach of contract to enforce the Confidential Settlement Agreement ("CSA"), dated March 11, 2022 (the "CSA Date") that resolved, *inter alia*, a litigation previously pending before this Court captioned *NRA v. AMc, et al.* (Civil Action No. 3:19-cv-

02074-G) (the "AMc Litigation"). The CSA contains a broad, mutual general release of all claims (the "Release") among the parties and their affiliates and/or related companies.

2.      Despite the CSA, an affiliate which is also a related company of Defendants continues to pursue litigation against the NRA. This ongoing litigation involves at least one controlling person principally involved with Defendants and an affiliate, Under Wild Skies, Inc. ("UWS"), namely, Anthony "Tony" Makris ("Makris"). The NRA and UWS are engaged in litigation in the Circuit Court of the County of Fairfax, Virginia, entitled *UWS v. NRA*, Case No. 2019-12530 (the "UWS Litigation").

3.      Defendants are attempting to rewrite the CSA, after-the-fact, as its affiliate (and related company), UWS, continues to pursue the UWS Litigation, the litigation of which is barred by the CSA. In fact, AMc and Mercury Group proposed to carve out of the CSA during negotiations. That proposal was rejected by the NRA.

4.      Not only does the CSA release the claims of AMc's and Mercury Group's affiliates and related companies, but all of the circumstances surrounding the negotiation of the CSA, in particular the Release, support the NRA's claims herein. Therefore, the NRA brings this action to hold Defendants liable for costs and other burdens incurred by the NRA in defending the UWS Litigation.

5.      Specifically, the UWS Litigation relates to UWS's malfeasance concerning installment contracts (the "UWS Agreements") for sponsorship and advertising deliverables ("Deliverables") relating to UWS's eponymously titled hunting show ("Under Wild Skies" or the "Show").

6.      The Show aired on television channels, including NRATV, a streaming network platform which AMc conceived and managed.

2

7.     Makris, a senior executive at AMc, the President of Mercury Group, and the President and principal owner of UWS, played a central role in the development of NRATV.

8.     As part of its effort to address a warning received in 2017 from regulators in New York (the state of NRA's incorporation), in 2018 the NRA began a compliance initiative relating to its third party vendors, such as Defendants and their affiliates and/or related companies. Thus, in 2019, the NRA specifically requested information from UWS concerning viewership and performance metrics in order to evaluate the effectiveness and return on investment of the dollars it was spending in connection with the Show. Under review were items including total viewership of the Show, solicitation, and metrics, sponsorship and marketing information.

9.     Shortly after the NRA requested financial and performance information, UWS repudiated the UWS Agreements, alleging that the NRA failed to make a single payment under the agreements. In the UWS Litigation, the NRA and UWS assert claims for breach of contract and each seek millions of dollars in damages based upon the dispute over UWS's billing of the NRA, the performance effectiveness of its Deliverables, and the required disclosure, *inter alia*, by UWS of platform metrics, viewership information, and marketing and business plans.

10.    The NRA, AMc, and Mercury Group were previously involved in contentious litigations, including in the Northern District of Texas, concerning the NRA's relationship with AMc and Mercury Group pursuant to which those entities provided an array of services including public relations and advertising, both traditional and internet based (the AMc Litigation).

11.    The AMc Litigation, like the UWS Litigation, arose out of efforts by the NRA to gain transparency into those entities' billing practices and performance metrics, including with respect to shows appearing on NRATV.

3

12.     AMc, Mercury Group, and UWS provided overlapping and purportedly synergistic services to the NRA in exchange for tens of millions of dollars in annual payments. Among services provided by the Defendants were their management of NRATV and its airing of the Show. As the Court may recall, key disputes in the AMc Litigation centered on issues such as NRATV's failure to increase outreach for the benefit of the NRA or to monetize its content in the form of increased NRA sponsorships and memberships.

13.     The NRA, AMc, Mercury Group, and a broad array of individuals and companies affiliated with and/or related to AMc and Mercury Group, settled the AMc Litigation pursuant to the CSA.[1] The CSA includes a global resolution and a broad, mutual Release of all claims presently known or unknown, suspected or unsuspected, past, present or future, based on any cause or thing whatsoever from the beginning of the world to the date of the Release contained in the CSA.

14.     As usual, in settlements of complex commercial cases, the CSA is binding on, *inter alia*, Defendants' employees, executives, affiliates, and related companies. UWS is an affiliate and/or related company of Defendants. UWS, through its President and sole owner Makris, is effectively controlled by and associated with Defendants, where Makris is also a senior executive of AMc and President of Mercury Group. Makris's spouse is the registered Vice President of UWS. Further, Makris's longtime executive assistant, employed by AMc, was until recently, UWS's registered Secretary.[2]

---

[1] A redacted version of the CSA was publicly filed on July 22, 2022 by Dycio & Biggs in *NRA, et al. v. Mark R. Dycio, et al.* (Case Nos. 2022-1960, 2022-2436) (Consolidated), in the Circuit Court of the County of Fairfax, Virginia; and on July 27, 2022, the NRA filed the same, redacted version in the UWS Litigation. At one point, Dycio & Biggs served as counsel for AMc in the AMc Litigation, and—tellingly—serve as lead counsel for UWS in its litigation against the NRA now. Name partner Dycio serves as UWS's registered agent.

[2] The Virginia Corporation Commission's website shows that West was removed as Secretary on July 28, 2022, following the NRA's attempts to enforce the terms of the Release. *See.*

15.     In addition to the above-referenced indicia of control, the entities demonstrate broad, significant interconnectedness. For example, documents show that UWS and AMc were intertwined with respect to the Deliverables rendered to the NRA, as well as with respect to billing practices.

16.     Because UWS is bound by the terms of the CSA, UWS released any and all claims against the NRA, and the litigation between the parties should have been dismissed. Unfortunately, despite the NRA's numerous requests and/or demands to the Defendants concerning the UWS Litigation, UWS continues to pursue the UWS Litigation in derogation of the terms of the CSA and in violation of public policy which favors the finality of settlements, the peaceable resolution of disputes, and the avoidance of vexatious litigation.

17.     In connection with the negotiation of the CSA, AMc and Mercury Group, on behalf of UWS, sought to carve out any pending or future claims against the NRA that UWS might have from the scope of the CSA and the Release.

18.     The NRA rejected all requests made by the Defendants prior to and at the time of the execution of the CSA to carve out any pending or future claims that UWS might have against the NRA. In fact, the CSA carves out only one set of claims from its scope, which relate to a dispute between the NRA and AMc's former counsel.

19.     The NRA brings this suit seeking damages for Defendants' breach of the CSA due to their failure to cooperate in the dismissal of the UWS Litigation.

---

https://cis.scc.virginia.gov/EntitySearch/BusinessInformation?businessId=150376&source=FromEntityResult&isSeries%20=%20false.

## II. PARTIES AND RELEVANT NON-PARTIES

20.     Plaintiff the NRA is a not-for-profit corporation organized under the laws of the State of New York with its principal place of business in Fairfax, Virginia. The NRA is America's leading provider of gun-safety and marksmanship education for civilians and law enforcement. It is also the foremost defender of the Second Amendment of the United States Constitution. A 501(c)(4) tax-exempt organization, the NRA has approximately 4.4 million members, hundreds of thousands of donors, and many millions more who support its legendary advocacy.

21.     AMc is a for-profit business corporation organized under the laws of the State of Oklahoma with its principal place of business located in Oklahoma City, Oklahoma. AMc is an advertising and public relations agency that counted the NRA as its largest client for more than 30 years. AMc at one point in time, maintained a principal office located at 1717 McKinney Avenue, Suite 1800, Dallas, Texas 75202, but that office has now closed.

22.     Mercury Group was a for-profit-business corporation organized under the laws of the State of Oklahoma and was a wholly owned subsidiary of Defendant AMc. Mercury Group specialized in public communication strategy, including on behalf of advocacy groups such as the NRA. Upon information and belief, Mercury Group once had its principal place of business in the Commonwealth of Virginia ("Virginia"), but that office is currently inactive in Virginia.

23.     Relevant non-party UWS is a Virginia corporation with its principal place of business at 1053 Main Street, Fairfax, Virginia. UWS is a foreign corporation doing business in the State of Texas. The president and owner of UWS is Makris, who is the President of Defendant Mercury Group and is also a senior executive at Defendant AMc. UWS produced the hunting television series, Under Wild Skies (the "Show"), for several years pursuant to a contract with the NRA. The Show was hosted by Makris. In the UWS litigation against the NRA, UWS currently

6

retains counsel who represented AMc in the AMc Litigation. UWS is an affiliate and/or related company of Defendants.

24.     Relevant non-party Makris is an AMc senior executive, the President of Mercury Group, and the President, owner and host of UWS.

### III. JURISDICTION AND VENUE

25.     The Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the NRA and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

26.     The parties agreed that the CSA must be construed in accordance with and governed by the laws of the State of Texas. The parties entered into an agreement that was to be performed wholly within the State of Texas.

27.     Pursuant to the CSA, AMc, Mercury Group, and their affiliates and/or related companies agreed to submit to the exclusive jurisdiction of this Court in connection with any dispute that may arise under the CSA, and waived any objection to the laying of venue in this Court.

### IV. FACTUAL BACKGROUND

**A. The UWS Litigation.**

28.     UWS is an entity solely owned and operated by its President, Makris. The Virginia State Corporation Commission website lists his spouse, Warner Loughlin, as the company's Vice President. His executive assistant from the offices of Defendants, Stephanie West ("West"), was at all relevant times, UWS's Secretary. UWS has no board of directors and no other employees.

29.     The Show is the sole business purpose for UWS's existence.

7

30.     On January 24, 2018, the NRA and UWS entered into the UWS Agreements. The UWS Agreements required UWS to provide Deliverables to the NRA each year through 2025 in connection with the Show in exchange for installment payments. The NRA and UWS had relationships for similar services pursuant to various contractual arrangements dating back to the 1990s.

31.     In the Summer of 2019, as part of its effort to ensure compliance with New York not-for-profit law, the NRA requested information from UWS regarding its performance, including, but not limited to, viewership, performance metrics, and any marketing and business plans. During this review, it became apparent that not only had UWS failed to perform fully its contractual obligations—facts which it concealed from the NRA—but that public interest in the Show had materially diminished. In response to questions about the aforementioned and after the NRA missed one installment payment under the UWS Agreements, UWS repudiated the UWS Agreements.

32.     Thereafter, UWS filed the UWS Litigation, claiming that the NRA breached the UWS Agreements by failing to pay UWS and seeking millions of dollars from the NRA. The NRA countersued for millions of dollars based on, *inter alia,* prior material breaches of the agreements.

33.     Makris, an individual in whom significant trust and confidence had been placed by the NRA, is a witness with knowledge of key factual issues in the UWS Litigation, the AMc Litigation, and this case.

**B.  The AMc Litigation.**

34.     AMc was a long-standing public relations firm for the NRA, with a relationship that lasted several decades, dating to the 1980s. AMc was responsible for creating and managing

8

NRATV, the goal of which was to expand the NRA's reach, appeal to a wider audience, and monetize digital advertising for the NRA's benefit.

35.     Mercury Group is the public relations subsidiary of AMc and worked closely with the NRA.

36.     The Show was conceived, planned, and executed in large part from Mercury Group's offices in Virginia using Mercury Group personnel.

37.     As noted, in addition to his ownership of UWS, Makris is the President of Mercury Group and is also a senior executive at AMc.

38.     The relationship between AMc and the NRA deteriorated in 2018, similar to the deterioration in the relationship with UWS, after the NRA requested books and records information from AMc as part of a broader effort to remain in compliance with applicable governmental regulations.

39.     After the NRA and AMc reached an impasse, the NRA sued AMc in April 2019 seeking books and records. As new information and details emerged, the NRA sued Defendants in Texas federal court for, among other things, claims related to the NRATV platform. Specifically, the NRA alleged that AMc provided the NRA with misleading performance information that exaggerated and overstated the performance and value of NRATV to the NRA.

40.     Makris was a key witness in the AMc Litigation, testifying on numerous important issues, including the important role that he played in the development of NRATV and its content. Further, he testified that the Show was a daily broadcast on NRATV.

C. The CSA.

41.     Pursuant to the CSA, the Defendants agreed, without limitation, to a global resolution and a broad, mutual Release of all present and pending known and unknown claims

9

that included pending claims of Defendants' past, present, and future named and unnamed affiliates and/or related companies, among other individuals and entities.

42.     The parties subsequently filed a stipulation of dismissal with prejudice in the AMc Litigation resulting in its termination on March 21, 2022.[3] Similarly, in *NRA v. AMc, et al.* (Case Nos. CL19001757, CL19002067, and CL19002886) (Consolidated), a matter in the Circuit Court of the City of Alexandria, Virginia, Defendants' and the NRA's motion to dismiss with prejudice was granted on April 6, 2022.[4]

43.     The CSA encompassed and applied to the dismissal of any and all pending claims by Defendants' affiliates and/or related companies.

**D.  As an Affiliate and/or Related Company of Defendants, UWS is Bound by the Release in the CSA.**

44.     Pursuant to the CSA and Texas law, UWS is an affiliate and/or related company of Defendants.

45.     Defendants and UWS shared common controlling executives and, in particular, Makris, who provided similar services to the NRA.

46.     As noted, Makris, UWS's President and owner, also serves as the President of Mercury Group and is a senior executive at AMc. He has been a high ranking executive of each of the companies since UWS's inception in the 1990s. Makris is also the sole host of the Show, which aired on NRATV.

47.     The entities—AMc, Mercury Group, and UWS—employed an overlapping business infrastructure and personnel. The administrative apparatus of Defendants was used by

---

[3] *See* Exhibit 1.

[4] *See* Exhibit 2.

10

Makris to conduct UWS business. Makris used his AMc email address to interact with the NRA and third parties when doing business for UWS. In addition, Makris's executive assistant, West, who, at all relevant times, was an AMc employee, was also at all relevant times the registered Secretary of UWS. West regularly performed work for Makris in connection with the Show, including through interactions with the NRA and third parties. West also used her AMc employee email address to conduct UWS business. Further she testified in the UWS Litigation that there were no UWS company email accounts until 2019.

48.     Nader Tavanger, another AMc executive, also provided services to the NRA in connection with UWS.

49.     The Show, created by Defendants' executives, delivered NRA marketing spots via programming to its viewers.

50.     Similarly, AMc produced and delivered branded NRA content through NRATV.

51.     In the UWS Litigation and AMc Litigation, UWS retained the same counsel as AMc against the NRA. Indeed, the same counsel represents UWS against the NRA still.

52.     There was shared corporate control with respect to Defendants' and UWS's provision of services to the NRA as well as their billing practices with respect to the NRA. In presentations made by AMc to NRA executives concerning NRATV (the "Presentations"), AMc identified UWS as a member of the NRATV "Digital Network," which AMc managed.  AMc's statements to the NRA in those Presentations formed the basis for certain of the NRA's claims in the AMc Litigation.

53.     Further, AMc's billing practices established that Defendants and UWS are affiliated and/or related.

11

54.     UWS's invoices to the NRA seek payment to the same address as Mercury Group's offices.

55.     Moreover, invoices were billed to AMc from Facebook concerning UWS programming on NRATV.

56.     In addition, invoices from AMc to the NRA reflect fees incurred by AMc for work developing UWS related content.

57.     As noted, the Show frequently aired on NRATV. In that regard, Makris testified at his deposition in the AMc Litigation that he "participated in NRATV from the beginning" and that "Under Wild Skies ran on a daily broadcast on NRATV. I was on there constantly."

58.     As established above, the UWS Litigation shares common facts and circumstances with those in the AMc Litigation. In each case, the NRA entered into litigation with a related vendor providing media services in exchange for monetary payments for the purpose of outreach and monetization. Those services were provided in connection with NRATV. In each case, the Litigations ensued after the NRA sought greater transparency and information concerning vendor billing practices and performance metrics.

59.     The NRA avers that the above facts establish that UWS is bound by the terms of the CSA including the Release therein.

**E.  Defendants' Breaches.**

60.     Despite objection from the NRA, the UWS Litigation, which was resolved by the CSA, remains ongoing in violation of the CSA to the continued, significant and unnecessary expense of the NRA.

61.     After the execution of the CSA, Defendants engaged in the following breaches of its obligations, including, but not limited to: claiming that the parties never intended to and/or did

not release the UWS Litigation or any future claims of UWS against the NRA as part of the CSA; and claiming that Defendants have no control over or connection with UWS and its owner, Makris, despite Defendants having sought to negotiate a carveout from the CSA on behalf of UWS.

62.     During negotiations, Defendants attempted to, but failed to obtain a carveout from the CSA for any pending or future claims of UWS against the NRA.

63.     Such carveout was rejected by the NRA, and AMc agreed to its removal.

64.     Subsequently, Defendants have willfully and deliberately refused to honor the CSA and its Release, the outcome of which is continuing litigation between UWS and the NRA.

65.     The payments made by the NRA pursuant to the CSA were consideration for, and contingent upon, Defendants' cooperation in complying with the terms of the CSA and the Release. That cooperation and compliance never materialized, as described herein.

66.     Defendants' aforementioned breaches have caused the UWS Litigation to continue, which is damaging the NRA by forcing it to incur increased attorneys' fees, costs, and expenses, in addition to other damages to be determined.

## V. CLAIMS

### A.     Count One: Breach of Contract

67.     The NRA incorporates the allegations in the preceding paragraphs as if fully set forth herein.

68.     The CSA is a legally enforceable contract and contains a Release of any and all claims between UWS and the NRA, either pending or future.

69.     The NRA has performed all of its obligations under the CSA.

70.     The ongoing UWS Litigation constitutes a material breach of the CSA by Defendants, which is a complete bar to the UWS Litigation.

71.     In committing such breach, Defendants have directly and proximately deprived the NRA of the benefits to which it was entitled under the CSA, causing injury to the NRA for which it seeks monetary damages in an amount to be determined.

72.     As a result of the ongoing UWS Litigation, the NRA has suffered and will continue to suffer harm in the form of attorneys' fees, costs, and expenses related to the defense of the UWS Litigation.

## VI.  DEMAND FOR JURY TRIAL

73.     The NRA hereby demands a trial by jury on all issues of fact to which it is entitled to a jury trial in this action.

## VII. PRAYER

74.     For all of the foregoing reasons, the NRA requests that the Court enter judgment in its favor and award the NRA the following relief against Defendants:

a.     Damages in an amount in excess of $75,000 to be determined at trial including:

i.    attorneys' fees and costs incurred by the NRA since March 11, 2022 in defending the UWS Litigation; and

ii.   amounts set forth in any and all judgments (if any) or court orders issued against Plaintiff (if any) in the UWS Litigation;

b.     An award of attorneys' fees, costs, and expenses incurred in this action to enforce the CSA;

c.    Prejudgment interest and post-judgment interest from the date of entry until

the date of satisfaction at the highest rates allowed by law; and

d.    Such other relief, at law or in equity, as the Court deems just and proper.

Dated: September 1, 2022                    Respectfully submitted,

                                            **BREWER, ATTORNEYS &**
                                            **COUNSELORS**

                                            By: _____

                                            Konstantin Parkhomenko
                                            State Bar No. 24074854
                                            knp@brewerattorneys.com
                                            1717 Main Street, Suite 5900
                                            Dallas, Texas 75201
                                            Telephone: (214) 653-4827
                                            Facsimile: (214) 653-1015

                                            **ATTORNEYS FOR PLAINTIFF THE**
                                            **NATIONAL RIFLE ASSOCIATION OF**
                                            **AMERICA**

15

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, | § § § | |
| **Plaintiff and Counter-Defendant** | § § | |
| v. | § § | |
| ACKERMAN MCQUEEN, INC., | § | Civil Action No. 3:19-cv-02074-G |
| **Defendant and Counter-Plaintiff,** | § § § | |
| and | § § | |
| MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, and MELANIE MONTGOMERY, | § § § § | |
| **Defendants.** | § § | |

## STIPULATION OF DISMISSAL WITH PREJUDICE

Plaintiff/Counter-Defendant, National Rifle Association of America; Defendant/Counter-Plaintiff, Ackerman McQueen, Inc.; and Defendants Mercury Group, Inc., Henry Martin, William Winkler, and Melanie Montgomery, hereby stipulate to the dismissal of all claims and counterclaims of this action, with prejudice, in accordance with Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, with each party paying their own fees and costs.

Dated: March 21, 2022

By: */s/ Cecelia L. Fanelli*
Cecelia L. Fanelli

**BREWER ATTORNEYS AND COUNSELORS**
Cecelia L. Fanelli
clf@brewerattorneys.com
Sarah B. Rogers
sbr@brewerattorneys.com
Philip J. Furia
pjf@brewerattorneys.com

David J. Partida
djp@brewerattorneys.com
Konstantin N. Parkhomenko
knp@brewerattorneys.com
1717 Main Street, Suite 5900
Dallas, Texas 75201

**ATTORNEYS FOR PLAINTIFF/COUNTER-
DEFENDANT NATIONAL RIFLE
ASSOCIATION OF AMERICA**

Dated: March 21, 2022          /s/ Brian E. Mason
**Brian E. Mason, Esq.**
Texas Bar No. 24079906
mason.brian@dorsey.com
**G. Michael Gruber, Esq.**
Texas Bar No. 08555400
gruber.mike@dorsey.com
**Jay J. Madrid, Esq.**
Texas Bar No. 12802000
madrid.jay@dorsey.com
**J. Brian Vanderwoude, Esq.**
Texas Bar No. 24047558
vanderwoude.brian@dorsey.com
**DORSEY & WHITNEY LLP**
300 Crescent Court, Suite 400
Dallas, Texas 75201
(214) 981-9900 Phone
(214) 981-9901 Facsimile
**ATTORNEYS FOR DEFENDANTS,
COUNTER-PLAINTIFF**

# EXHIBIT 2

**V I R G I N I A :**

**IN THE CIRCUIT COURT OF**
**THE CITY OF ALEXANDRIA**

| | |
|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. CL19001757;** |
| **ACKERMAN MCQUEEN, INC.** | **CL19002067; CL19002886** |
| **and** | **Consolidated** |
| **MERCURY GROUP, INC.** | |
| **Defendants.** | |

**ORDER**

Upon representation of the parties, and it appearing from the signatures subscribed below that the parties hereto have reached a full, final and complete settlement of all claims of Plaintiff the National Rifle Association of America ("Plaintiff") against Defendants Ackerman McQueen, Inc. and Mercury Group, Inc. ("Defendants") and counterclaims of Defendants against Plaintiff and pursuant to the Court's March 18, 2020 Order Granting Defendants' Motion to Stay Proceedings, the parties have filed a Joint Status Report and Motion for Dismissal with Prejudice, informing the Court that the case *National Rifle Association of America v. Ackerman McQueen, Inc., et al.*, Civil Action No. 3:19-cv-02074-G pending in the Northern District of Texas has been dismissed and moving for dismissal of all claims and counterclaim in this case;

It is ORDERED that the stay is hereby lifted in this case; and

1

It is FURTHER ORDERED that all of Plaintiff's claims and all of Defendants' counterclaims be, and same hereby are, dismissed with prejudice with each party to bear their own attorneys' fees and costs.

THIS ORDER IS FINAL.

So Ordered this __6__ day of ~~March~~, 2022.

_____
JUDGE
Circuit Court of the City of Alexandria

WE ASK FOR THIS:

James W. Hundley (VSB No. 30723)
Robert H. Cox (VSB No. 33118)
Amy L. Bradley (VSB No. 80155)
BRIGLIA HUNDLEY, P.C.
1921 Gallows Road, Suite 750
Tysons Corner, Virginia 22182
(703) 883-0880 [telephone]
(703) 883-0899 [facsimile]
jhundley@brigliahundley.com
rcox@brigliahundley.com
abradley@brigliahundley.com

A Copy Teste:

J. Greg Parks, Clerk

By _____, Deputy Clerk

Certified this _8_ day of _April_, 20 _22_

*Counsel for Plaintiff the National Rifle Association of America*

2

SEEN AND AGREED:

David Schertler (*pro hac vice*)
David Dickieson (VSB No. 31768)
Schertler & Onorato, LLP
901 New York Avenue, N.W.
Suite 500
Washington, D.C. 20001
dschertler@schertlerlaw.com
ddickieson@schertlerlaw.com

*Counsel for Defendants Ackerman McQueen, Inc.*
*And Mercury Group, Inc.*

3

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**RECEIVED**

SEP 1 2022

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

## I. (a) PLAINTIFFS

National Rifle Association of America

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Konstantin N. Parkhomenko, Brewer Attorneys & Counselors
1717 Main Street 59th Floor Dallas, TX 75201, 214-653-4841

## DEFENDANTS

Ackerman McQueen, Inc., and Mercury Group, Inc.

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

Brian Mason, Dorsey & Whitney LLP 300 Crescent Court Suite
400 Dallas, TX 75201, 214-981-9900

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [x] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [x] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [x] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S. Code § 1332
Brief description of cause:
Breach of Contract

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE Senior Judge A. Joe Fish
DOCKET NUMBER 3:19-cv-02074-G-BK

DATE
Sep 1, 2022

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____