

**SEALED**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, | § § § | |
| Plaintiff, | § § | Civil Action No. 3:22-CV-1944-G |
| vs. | § § | The Honorable A. Joe Fish, presiding |
| ACKERMAN McQUEEN, INC. and MERCURY GROUP, INC., et al. | § § § § | **FILED UNDER SEAL** |
| Defendants. | § § | |

# DEFENDANT ANTHONY MAKRIS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

/s/ *James S. Robertson, III*
James S. Robertson, III
State Bar No. 17061075
GLAST, PHILLIPS & MURRAY, P.C.
14801 Quorum Drive, Suite 500
Dallas, TX 75254-1449
972-419-7136
469-206-5048 – Telecopier
jrobertson@gpm-law.com

ATTORNEY FOR
DEFENDANT ANTHONY MAKRIS

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i
INDEX OF AUTHORITIES ....................................................................................................... ii
I.   SUMMARY .........................................................................................................................1
II.  FACTUAL BACKGROUND ..............................................................................................2
III. ARGUMENT AND AUTHORITIES ..................................................................................5
     A.  Applicable Legal Standard .........................................................................................5
     B.  The NRA Releases Anthony Makris From All Claims ..............................................5
     C.  Makris Is Not Liable to the NRA Under the CSA .....................................................8
     D.  Res Judicata ................................................................................................................8
IV.  COLLATERAL ESTOPPEL .............................................................................................10
V.   CONCLUSION ..................................................................................................................11

# Index Of Authorities

**Cases**

*Am. Mfrs. Mut. Ins. Co. v. Schaefer,*
  124 S.W.3d 154, 158 (Tex. 2003) ............................................................................................ 7

*Amstadt v. U.S. Brass Corp.,*
  919 S.W.2d 644, 652 (Tex. 1996) ............................................................................................ 8

*Barr v. Resolution Trust Corp. et rel Sunbelt Federal Savings,*
  837 S.W.2d 627, 628 (Tex. 1992) ............................................................................................ 8

*Benson v. Wanda Petroleum Co.,*
  468 S.W.2d 361, 362-63 (Tex. 1971)) .................................................................................... 10

*Brooks v. Arthur,*
  626 F.3d 194 (4th Cir. 2010) .................................................................................................... 9

*Celotex Corp. v. Catrett,*
  477 U.S. 317, 322 (1986) ......................................................................................................... 5

*Celotex Corp. v. Catrett,*
  477 U.S. at 322-23 .................................................................................................................... 5

*Certain Underwriters at Lloyds London v. Law,*
  570 F.3d 574, 577 (5th Cir. 2009) ............................................................................................ 7

*Dunston v. Huang,*
  709 F. Supp. 2d 414 (E.D. Va. 2010) ....................................................................................... 9

*Eagle Properties Ltd. v. Sharbauer,*
  807 S.W.2d, 714, 721-22 (Tex. 1990) .................................................................................... 10

*Gray & Co. Realtors, Inc. v. Atl. Hous. Found., Inc.,*
  228 S.W.3d 431, 434 (Tex. App. – Dallas 2007, no pet.) ......................................................... 7

*Heritage Res., Inc. v. NationsBank, Co.,*
  939 S.W.2d 118, 121 (Tex. 1996) ............................................................................................ 7

*Jackson v. RTC,*
  No. 94-50272, 1994 U.S. App. LEXIS 41438 at *3-6 (5th Cir. Sep. 15, 1994) ........................ 8

*Migra v. Warren City School District Board of Education,*
  465 U.S. 75, 81 (1994) ........................................................................................................... 11

*Modrowski v. Piganto,*
  712 F3d 1166, 1169 (7th Cir. 2013 .......................................................................................... 5

*Naik v. Naik,*
  438 S.W.3d 166, 175 (Tex. App.—Dallas 2014, no pet.) ......................................................... 6

*Perez v. Lorraine Enters., Inc.,*
  769 F.3d 23, 29-30 (1st Cir. 2014) ........................................................................................... 5

*Rodriguez v. Ysleta Indep. Sch. Dist,*
  No. EP-05-CV-0112-FM, 2006 U.S. Dist. LEXIS 39228 at *11 (W.D. Tex. 2006), aff'd 217
  F. App'x 294 (5th Cir. 2007) .................................................................................................... 9

*Scott v. Harris*,
  550 U.S. 372, 380 (2007) .................................................................................................. 5
*Snead v. Bendigo*,
  240 Va. 399, 397 S.E. 2d 649 (1990) ............................................................................. 11
*Sysco Food Services, Inc. v. Trapnell*,
  890 S.W. 2d 796, 801 (Tex. 1994) .................................................................................. 10
*Texas Water Rights Commission v. Crow Iron Works*,
  582 S.W.2d 768, 771072 (Tex. 1979) .............................................................................. 8
*The Funny Guy, LLC, et al v. Lecego, LLC, et al*,
  293 Va. 135, 795 S.E. 2d 887 (2017) .............................................................................. 9
*Wilhite v. Adams*,
  640 S.W. 2d 875, 876 (Tex. 1982) ................................................................................. 10

**Statutes**

FED. R. CIV. P. 56(a) ............................................................................................................. 5
Va. R. Sup. C. 1:6 .................................................................................................................. 9

**Other Resources**

BLACK'S LAW DICTIONARY 54 (5th ed. 1979). ................................................................... 7
CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/related-
  company ............................................................................................................................ 7
LAW INSIDER, https://www.lawinsider.com/about ............................................................. 7
LAW INSIDER, https://www.lawinsider.com/dictionary/related-company ........................ 7
THE AMERICAN HERITAGE COLLEGE DICTIONARY 22 (3rd ed. 1993). ............................. 7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, | § § § | |
| Plaintiff, | § § | Civil Action No. 3:22-CV-1944-G |
| | § | The Honorable A. Joe Fish, presiding |
| vs. | § § | |
| ACKERMAN McQUEEN, INC. and MERCURY GROUP, INC., et al. | § § § | **FILED UNDER SEAL** |
| Defendants. | § § | |

## DEFENDANT ANTHONY MAKRIS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

TO:    THE HONORABLE JUDGE A. JOE FISH:

### I.    SUMMARY

1.1    Plaintiff, National Rifle Association of America (the "***NRA***"), alleges in this case that defendant Anthony Makris ("***Makris***"), though not a named party to a Confidential Settlement Agreement dated March 11, 2022 that is a subject of this case and that concluded another earlier case in this Court, is nevertheless bound by that agreement; that Makris and an entity he owns and controls, Under Wild Skies, Inc. ("***UWS***") are really one and the same person; that Makris, being essentially the same person as UWS, is in breach of the settlement agreement because UWS, also not a named party to the settlement agreement, brought a lawsuit against the NRA in state court in Virginia but should not have done so because the settlement agreement barred that Virginia lawsuit. UWS recovered a judgment against the NRA in the Virginia case and that judgment is on appeal. The NRA also alleges in this case that Makris defrauded the NRA and breached fiduciary

duties with respect to certain invoices that UWS submitted to the NRA over a period of time extending from 2009 to 2019.

1.2   Makris is entitled to summary judgment in his favor on (a) the NRA's breach of contract cause of action because Makris is not a party to the Virginia case, the pursuit of which the NRA alleges breached the settlement agreement and UWS is not a party to the settlement agreement, (b) the NRA's breach of fiduciary duty and fraud causes of action because the NRA clearly and unequivocally released Makris of all liability he might have had to the NRA under the settlement agreement, and on (c) the declaratory judgment causes of action (Counts Four and Five in *Plaintiff's Second Amended Complaint*) and (d) the NRA's cause of action for an accounting (Count Six in *Plaintiff's Second Amended Complaint*) because they are not independent causes of action as such but rather are entirely derivative of the other causes of action and fail, if for no other reason, because they fall with the other causes of action.

## II.   FACTUAL BACKGROUND

2.1   In support of the following statements of fact, Makris relies on the pleadings on file in this case and the material included in the appendix filed contemporaneous with Makris' motion for summary judgment and this brief in support of same. The appendix is cited as "App."

2.2   On or about March 11, 2022, Ackerman McQueen, Inc., Mercury Group, Inc., Henry Martin, William Winkler and Melanie Montgomery and the NRA entered into a *Confidential Settlement Agreement* dated March 11, 2022 by which they settled, among other disputes, a lawsuit then pending in this Court styled *National Rifle Association of America v. Ackerman McQueen, Inc., et al* and filed under Case No. 3:19-cv-02074-G (the "***CSA***").[1]

---

[1] CSA, pp. 1-3 and §4, captioned "Mutual Releases," for a description of the matters settled. [App. pp. 5 – 8]

2.3 In the CSA, the NRA and the "Ackerman Parties" (hereinafter defined) agreed to "fully, finally, irrevocably, and unconditionally release and forever discharge and covenant not to sue one another of and from any and all claims, allegations, duties, causes of action, lawsuits, proceedings, contracts, demands, obligations, liabilities, rights, damages, costs, fees, or expenses, equitable or declaratory relief of any kind or nature . . . whether presently *known or unknown, suspected or unsuspected*, past, present or future which the parties had, now have or hereafter can, shall or may, have for, upon, or by reason of any matter, cause or thing whatsoever from the *beginning of the world to the date of this Release* including, but not limited to claims that arise out of, relate to, or are in any way connected to the services provided by the Ackerman Parties to the NRA, including but not limited to with respect to the Services, the NRA's activities in connection with the Services, the NRA/AMc Litigation, the Loesch Arbitration, the facts and circumstances that are connected to or form the basis of the respective parties claims in the NRA/AMc Litigation and the Loesch Arbitration, or that arise out of any agreement, act, omission, occurrence, transaction, or matter up to and including the date of this Agreement" (emphasis added).[2]

2.4 The CSA defines the term "Ackerman Parties" to mean and refer to AMc and Mercury Group among others. It defines the terms "AMc" and "Mercury Group" to mean and refer, respectively, to Ackerman McQueen, Inc. and Mercury Group, Inc. and "all of [their] *past, present and future* named and unnamed . . . owners, shareholders, representatives, directors, agents, partners, principals, officers, executives" and others (emphasis added).[3] Moreover, the definitions of "AMc" and "Mercury Group" in the CSA expressly provide that the "the respective

---

[2] CSA, §4 [App. pp. 7-8].
[3] CSA, p. 2 [App. p. 6].

rights and obligations [under the CSA] shall be defined to include, shall be binding on, and benefit to" such persons.[4]

2.5  In the NRA's second amended complaint, the NRA identifies Makris as a controlling person in AMc and Mercury Group, past President of Mercury Group, a key or senior executive at AMc since the 1980s and a high-ranking executive of each company.[5] Indeed, Makris has served as an officer of AMc and Mercury Group.[6] Makris clearly and unequivocally falls within the definition of an "Ackerman Party" under the CSA.

2.6  In 2019, UWS sued the NRA in the Circuit Court of Fairfax County, Virginia in a case styed *Under Wild Skies, Inc. v. National Rifle Association of America* and bearing Case No. 2019-12530 alleging breach of contract and other causes of action (the "UWS Litigation").[7]

2.7  The UWS Litigation was tried to a jury in Fairfax County, Virginia from September 12 through 20, 2022; the jury returned a verdict in favor of UWS finding damages in excess of $500,000.00.[8]

2.8  Makris is, and at all times relevant has been, the owner of UWS and President of UWS.[9]

---

[4] CSA, p. 1 [App. p. 5].
[5] See *Plaintiff's Second Amended Complaint*, ¶72 [App. p. 32].
[6] Makris Decl., ¶3 [App. p. 195]
[7] See *Plaintiff's Second Amended Complaint*, ¶7; [App p. 18]; Makris Decl., ¶ 3].
[8] Biggs Decl., ¶¶ 4 -5 [App. p. 140].
[9] Makris Decl., ¶ 2 [App. p. 195]

2.9     All of the Supplemental Invoices about which the NRA claims and on which its fraud and breach of fiduciary duty and related claims are grounded were issued between November, 2009 and December, 2018.[10] The CSA has an effective date of March 11, 2022.[11]

### III.     ARGUMENT AND AUTHORITIES

**A.     Applicable Legal Standard.**

3.1     Summary judgment is proper in a case or with respect to a cause of action when there is no genuine issue of material fact.[12] A defendant who seeks summary judgment on a plaintiff's claim must demonstrate the absence of a genuine dispute of material fact by either (a) submitting summary-judgment evidence that negates the existence of a material element of the plaintiff's claim, or (b) showing that there is no evidence to support an essential element of the plaintiff's claim.[13]

**B.     The NRA Released Anthony Makris From All Claims.**

3.2     The NRA argues that Makris and UWS are bound by the CSA but that neither benefits from it. The NRA is partially wrong and partially right. Neither UWS nor Makris are named parties to the CSA but Makris, being a past or present officer of AMC and Mercury, is clearly an intended beneficiary of it.

3.3     In the CSA, the NRA clearly and unequivocally released Makris from any claims the NRA might have had against him arising "from the beginning of the world" to March 11, 2022.[14]

---

[10] *Plaintiff's Second Amended Complaint*, ¶63 [App. p. 28-29] and Exhibit 5 to such complaint [App. pp. 66-72].
[11] CSA, opening paragraph [App. p. 5]
[12] FED. R. CIV. P. 56(a). *Scott v. Harris*, 550 U.S. 372, 380 (2007) ; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ; *Perez v. Lorraine Enters., Inc.*, 769 F.3d 23, 29-30 (1st Cir. 2014).
[13] *Celotex Corp. v. Catrett*, 477 U.S. at 322-23; *Modrowski v. Piganto*, 712 F3d 1166, 1169 (7th Cir. 2013).
[14] CSA, §4 [App. pp. 7-8]

3.4    Under Texas law, an effective release must "mention" the claim to be released, though it is not necessary that each claim be explicitly mentioned.[15] Moreover, a valid release may encompass claims and damages unknown at the time the release is made and broad, general, categorical releases are effective.[16]

3.5    In this case, the CSA specifically mentions "claims that arise out of, relate to, or are in any way connected to the services provided by the Ackerman Parties to the NRA" as well as claims "that are connected to or form the basis of the respective parties *[sic]* claims in the NRA/AMc Litigation . . . or that arise out of any agreement, act, omission, occurrence, transaction or matter up to and including the date of this Agreement."

3.6    The NRA's causes of action asserted against Makris in this case other than its breach of contract cause of action are grounded in activity that allegedly occurred well before the effective date of the CSA and clearly fall within the scope of the claims released under a plain reading of the CSA's release provision.

3.7    The NRA's cause of action for Makris alleged breach of the CSA fails because UWS's pursuit of the UWS Litigation is not precluded by the CSA.

---

[15] *Naik v. Naik*, 438 S.W.3d 166, 175 (Tex. App.—Dallas 2014, no pet.).
[16] *Id.*

3.8    UWS is not a named party in the CSA nor is it an "affiliate" of any of the named parties, nor is it a "related company." Neither term is defined in the CSA. Words not defined in a contract are to be understood "according to their plain and ordinary meaning."[17] The American Heritage College Dictionary defines an affiliate as "[a] person or an organization associated with another as a subordinate subsidiary, or member."[18] Black's Law Dictionary defines an "affiliate company" as a "[c]ompany effectively controlled by another company and affiliated corporations as "[c]orporations which are related as parent and subsidiary, characterized by identity of ownership of capital stock".[19] Similarly, the Cambridge Dictionary defines a "related company" as "a company that controls or is controlled by another company."[20] UWS does not fit within the definition of either term, "affiliate" or "related company."

3.9    Finally, if the CSA in any way precluded the UWS Litigation proceeding to trial or served as the basis for a defense to that litigation, the state court in Virginia was the proper forum to present it. Indeed, the NRA raised the CSA as a defense to UWS's claims but the Virginia court rejected that effort.[21]

---

[17] *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 158 (Tex. 2003) ; *Heritage Res., Inc. v. NationsBank, Co.*, 939 S.W.2d 118, 121 (Tex. 1996) ; *Certain Underwriters at Lloyds London v. Law*, 570 F.3d 574, 577 (5th Cir. 2009) (citing *Gray & Co. Realtors, Inc. v. Atl. Hous. Found., Inc.*, 228 S.W.3d 431, 434 (Tex. App.—Dallas 2007, no pet.)).

[18] THE AMERICAN HERITAGE COLLEGE DICTIONARY 22 (3rd ed. 1993).

[19] BLACK'S LAW DICTIONARY 54 (5th ed. 1979).

[20] CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/related-company (last visited May 23, 2023). *See* LAW INSIDER, a self-described online "subscription based contract database and resource center that helps over 300,000 lawyers and business owners draft and negotiate contracts more effectively" [https://www.lawinsider.com/about (last visited May 23, 2023)] provides a definition of "related company" as follows: "Related Company means any entity that is directly or indirectly controlled by, in control of or under common control with the Company." [https://www.lawinsider.com/dictionary/related-company (last visited May 23, 2023)] .

[21] Biggs Decl., ¶¶ 8 – 10 and Exhibit 3 thereto [App. pp. 141-142 and p. 169]

C.      **Makris Is Not Liable to the NRA Under the CSA.**

3.10    While Makris as a past or present officer of AMc and Mercury was an intended beneficiary of the CSA, falling within the scope of the term Ackerman Parties and benefitted from the release contained in that agreement, he was not a party to the CSA and undertook no contractual obligations toward the NRA in it. Nor did UWS, as such, he could not have breached any obligation to the NRA by virtue of UWS's pursuit of the Virginia Litigation even if he and UWS were one and the same person, which Makris denies.

D.      **Res Judicata**

3.11    The NRA's causes of action against Makris are barred by the doctrine of *res judicata*.

3.12    Res judicata, or claim preclusion, prevents the re-litigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, could or should have been litigated in the prior suit.[22] Texas law requires, with respect to the application of res judicata, proof of the following elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action.[23]

---

[22] *See Jackson v. RTC*, No. 94-50272, 1994 U.S. App. LEXIS 41438 at *3-6 (5th Cir. Sep. 15, 1994) *(per curiam;* quoting *Barr v. Resolution Trust Corp. ex rel Sunbelt Federal Savings,* 837 S.W.2d 627, 628 (Tex. 1992)).

[23] *See Amstadt v. U.S. Brass Corp.,* 919 S.W.2d 644, 652 (Tex. 1996) (citing *Texas Water Rights Commission v. Crow Iron Works,* 582 S.W.2d 768, 771-72 (Tex. 1979)).

3.13 Furthermore, the Texas Supreme Court has adopted Restatement Second of Judgments' "transactional test" to determine whether the second action is based on the same claims as were raised or which could have been raised in the first action.[24]

3.14 Even if Virginia law (the jurisdiction yielding the referenced court orders) were to apply in this case, Virginia rules regarding res judicata track, unsurprisingly, the Texas rule:

> "(a) Definition of Cause of Action. A party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final judgment, is forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from the same conduct, transaction or occurrence, whether or not the legal theory or rights asserted in the second or subsequent action were raised in the prior lawsuit, and regardless of the legal elements or the evidence upon which any claims in the prior proceeding depended, or the particular remedies sought. A claim for relief pursuant to this rule includes those set forth in a complaint, counterclaim, cross-claim or third party pleading."[25]

3.15 Here, res judicata applies as an affirmative defense to the NRA's causes of action asserted against Makris. As shown by the evidence presented the issue of whether the release provision of the CSA applied to UWS claims against the NRA (and thus, precluded the UWS Litigation) was fully litigated to finality in the UWS Litigation.[26] While UWS was a party to that lawsuit and Makris was not named individually, Makris is clearly a person "in privity" with UWS as its owner and control person. Thus, all three of the elements necessary for the application of res judicata exist.

---

[24] *See Rodriguez v. Ysleta Indep. Sch. Dist.*, No. EP-05-CV-0112-FM, 2006 U.S. Dist. LEXIS 39228 at *11 (W.D. Tex. 2006), aff'd 217 F. App'x 294 (5th Cir. 2007) (applying Texas state preclusion law in considering a 42 USC §1983 claim).

[25] VA. R. SUP. C. 1:6. (Emphasis added); *See also Brooks v. Arthur*, 626 F.3d 194 (4th Cir. 2010) (finding that R. 1:6 barred the Plaintiff's section 1983 retaliation claim where the Plaintiff had previously litigated a discrimination claim through a state grievance procedure); *Dunston v. Huang*, 709 F. Supp. 2d 414 (E.D. Va. 2010) (finding R. 1:6 supersedes the "same evidence test" and applying the "same transaction or occurrence test" to the Virginia code section 8.01-61 – the Non-Suit Tolling provision); *accord The Funny Guy, LLC, et al v. Lecego, LLC, et al*, 293 Va. 135, 795 S.E. 2d 887 (2017) (applying the "same transaction" test).

[26] *See* Biggs Decl. ¶12, [App. p. 143].

E.  **COLLATERAL ESTOPPEL**

3.16   Collateral Estoppel (also known as issue preclusion) "is designed to promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent judgments by precluding the re-litigation of issues."[27]  Under Texas Law, "collateral estoppel only precludes the re-litigation of identical issues of fact or law which were actually litigated and essential to the prior judgment."[28] "In other words, this doctrine precludes the re-litigation of identical issues actually litigated in a previous case, even though the subsequent action is based upon a different cause of action."[29]

3.17   The facts are undisputed that the issue of whether the UWS claims asserted in the UWS litigation were subject to the release provisions of the CSA was fully litigated. To be sure, the Court in Virginia, on repeated occasions prior to trial, specifically found that UWS was not covered by the broad release. Inherent in those rulings is the determination that UWS was neither an "affiliate" of nor a "related company" to AMc or MG, both of whom were parties to the CSA. Those same terms were the focus of the NRA's Plea in Bar and Memorandum of Law in Support.[30]

3.18   It is also undisputed that in an effort to keep alive the argument that UWS claims had been released in the CSA, and in defiance of two prior rulings, the NRA attempted an eleventh hour effort to be permitted to urge "Release" as an affirmative defense – the same issue the NRA is now asking this Court to revive—the third strike on this issue was called by the Virginia Court, in denying that requested affirmative defense.[31]

---

[27] *Sysco Food Services, Inc. v. Trapnell,* 890 S.W. 2d 796, 801 (Tex. 1994) (collecting cases).

[28] *Eagle Properties Ltd. v. Sharbauer,* 807 S.W.2d, 714, 721-22 (Tex. 1990) (citing cases).

[29] *Wilhite v. Adams,* 640 S.W. 2d 875, 876 (Tex. 1982) (citing *Benson v. Wanda Petroleum Co.,* 468 S.W.2d 361, 362-63 (Tex. 1971)).

[30] Biggs Dec. ¶ 8 [App. p. 141]

[31] *See* Biggs Decl. ¶ 6-9 [App. pp. 140-142]

3.19  It is equally well established that a Federal Court must give to a State Court Judgment in another jurisdiction the same preclusive effect as would be given that judgment under the law in the state in which the judgment was rendered.[32]

3.20  Similarly, Virginia recognizes that the doctrine of collateral estoppel applies even when different causes of action are involved but issues which were actually litigated in a previous action – which issues were "essential to a valid, finally personal judgment in the first action" – are barred.

3.21  In *Snead v. Bendigo*, 240 Va. 399, 397 S.E. 2d 649 (1990), a physician obtained a judgment for unpaid fees in a court of general jurisdiction in Virginia. The Defendant contested the debt claiming that the treatment of his broken leg by the physician left him with more damage than before the treatment. The court entered judgment on the debt for the physician, who was later sued by that patient for medical malpractice in a different court. That court applied collateral estoppel to bar the second suit, because the same complaint by the patient had been raised previously and found against him.

3.22  In the instant case, the same result should obtain given the identity of the issues previously litigated.

## IV.  CONCLUSION

No genuine issue of material fact exists regarding the fact that: Makris is a past or present officer of Ackerman McQueen and Mercury Group; under the CSA the NRA released any claims it had or might have had, known and unknown, against Makris; Makris is not a party to the CSA; Makris, individually, is not a party to the Virginia Litigation. Accordingly, Makris prays that,

---

[32] *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81 (1994).

upon hearing the court grant his motion for summary judgment, and grant such other relief to which he may show himself entitled.

Respectfully submitted,

/s/ *James S. Robertson, III*
James S. Robertson, III
State Bar No. 17061075
GLAST, PHILLIPS & MURRAY, P.C.
14801 Quorum Drive, Suite 500
Dallas, TX 75254-1449
972-419-7136 – Telephone
469-206-5048 – Telecopier
jrobertson@gpm-law.com

ATTORNEY FOR DEFENDANT
ANTHONY MAKRIS

## CERTIFICATE OF SERVICE

I certify that on May 24, 2023 a copy of the foregoing was served on the following persons by first class mail and by email in accordance with FED. R. CIV. P. 5:

Ramon Hernandez
BREWER, ATTORNEYS & COUNSELORS
1717 Main Street, Suite 5900
Dallas, TX 75201
rxh@brewerattorneys.com

*Attorney for Plaintiff*

Cecelia L. Fanelli
BREWER, ATTORNEYS & COUNSELORS
750 Lexington Avenue, 14th Floor
New York, NY 10022
clf@brewerattorneys.com

*Attorney for Plaintiff*

Jay J. Madrid
Brian Vanderwoude
Monica Niewiarowski
DORSEY & WHITNEY LLP
200 Crescent Court, Suite 1600
Dallas, TX 75201
madrid.jay@dorsey.com
vanderwoude.brian@dorsey.com
niewiarowski.monica@dorsey.com

*Attorneys for Ackerman McQueen, Inc.
and Mercury Group, Inc.*

/s/ *James S. Robertson, III*
James S. Robertson, III